UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:13-CV-1166-H

JONATHAN C. WILLIAMS, *et al.*　　　　　　　　PLAINTIFFS/COUNTER-DEFENDANTS

V.

PORTER BANCORP, INC., *et al.*　　　　　　　　　　　　　　　　　　　　DEFENDANTS

PBI BANK, INC.　　　　　　　　　　　　　　　　　　DEFENDANT/COUNTER-PLAINTIFF

V.

MITCH TAYLOR, *et al.*　　　　　　　　　　　　　　　　　　　　COUNTER-DEFENDANTS

### MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Porter Bancorp, Inc.'s ("Porter Bancorp") motion to dismiss Plaintiffs' Complaint pursuant to Rule 12(b)(6). Plaintiffs[1] are customers of PBI Bank, Inc. ("PBI"), who sued various parties allegedly involved in an illegal tying arrangement, including PBI, Porter Bancorp, and three individuals, Mark Delcotto, Wayne Stefanovich, and Maria Bouvette.[2] Plaintiffs allege (1) breach of contract and breach of the duty of good faith and fair dealing against PBI; (2) negligence against PBI, Porter Bancorp, Delcotto, Stefanovich, and Bouvette; and (3) illegal tying in violation of 12 U.S.C. § 1972 against PBI and Porter Bancorp, as well as punitive damages based upon these claims. Plaintiffs Daniel Sexton and Fayette Aviation only allege an additional cause of action against PBI for improper re-possession and

---

[1] Plaintiffs include Jonathan C. Williams, Daniel E. Sexton, Mobile Home Sales of Central Kentucky, LLC, Fayette Aviation, Inc., Star Lite Development, LLC, 3660 Realty, LLC, Food Service of Lexington, LLC, and Georgetown Mobile Estates, LLC.

[2] Defendant PBI filed a counterclaim against Williams, Sexton, Mobile Home Sales, Fayette Aviation, and Star Lite, as well as a Third-Party Complaint against Mitch Taylor, Sarah Taylor, AES Realty, LLC, FTS Realty, LLC, Andrei Korossy, Rosenbaum & Rosenbaum, PSC, American Tax Funding, LLC, DES Realty, LLC, and Jamos Fund I, LP.

violation of K.R.S. § 355.9-207. The current motion only directly affects claims against Porter Bancorp.

I.

According to Plaintiffs, the facts are these.

On January 30, 2008, Plaintiff Jonathan Williams obtained a loan with PBI for $4.25 million, which was set to mature on June 30, 2008, and secured by real estate owned by Plaintiff Daniel Sexton.

On February 19, PBI, through its Vice President Joseph Tobin, told Williams that PBI had a loan to Brooklyn Pizza guaranteed by Brad and Matt Schooler, and that Brooklyn Pizza was facing a forcible detainer suit and would have to close unless $24,000 in delinquent lease payments were made. PBI also told Williams that if Brooklyn Pizza closed, PBI's loan to it would go unpaid and would have to be written off. PBI told Williams and Sexton that in order for PBI to renew the $4.25 million loan or to make a new loan to pay off the $4.25 million under workable terms, Williams and Sexton must pay the $24,000 owed by Brooklyn Pizza and obtain a 51% ownership in that company, thereby taking over the debt from Brooklyn Pizza to PBI. Williams and Sexton reluctantly agreed.

After Williams and Sexton began operating Brooklyn Pizza through Plaintiff Food Service of Lexington, Inc., PBI told them that another condition for renewing the $4.25 million loan was to allow a PBI agent to pick up the daily deposits of Brooklyn Pizza and deposit them at PBI, for a fee of $150 per week.

On June 13, 2008, Williams, Sexton, Mobile Home Sales, Star Lite, and Fayette Aviation entered into a loan agreement with PBI in the amount of $5.25 million, which paid off the $4.25 million loan and which new loan matured on June 13, 2009. By December 2008, Plaintiffs knew

that as a result of the economic downturn, they would not be able to pay off the $5.25 million PBI loan on June 13 and would thus need a renewal, extension, or new loan.

On December 26, 2008, PBI, through Tobin, and Porter Bancorp, through Delcotto, told Williams and Sexton that PBI would only extend credit of the $5.25 million loan if they assumed the $66,000 debt of Chance Farley, which was in default. Williams and Sexton reluctantly agreed. On December 31, Tobin and Delcotto told Williams and Sexton that another condition of the $5.25 million loan was that they had to purchase from PBI OREO (other real estate owned) property located at 3660 Barrowood, Lexington, Kentucky, for $850,000, which was more than it was worth, as well as obtain a $300,000 line of credit from PBI to finish the property. Williams and Sexton again felt forced to agree.

Despite assurances to the contrary, at the closing for the 3660 property, PBI took a mortgage on all of Sexton's property including property leased to Penske. PBI knew that the lease contained a restriction of no additional mortgages and thus Penske would be able to terminate its lease, causing Sexton loss of monthly income. Penske did terminate its lease.

Finally, in November 2010, PBI set off money in the amount of $27,000 from its customer, Georgetown Mobile Estates, LLC's bank account at PBI in violation of its contractual agreement.

II.

Porter Bancorp moves to dismiss Plaintiffs' claims against it for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "The defendant has the burden of showing that the plaintiff has failed to state a claim for relief." *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (citing *Carver v. Bunch*, 946 F.2d 451, 454–55 (6th Cir. 1991)). A claim meets the plausibility standard "when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

When considering a 12(b)(6) motion to dismiss, courts must "construe the complaint in the light most favorable to the plaintiff" and "accept all well-pleaded factual allegations as true." *La. Sch. Emps.' Ret. Sys. v. Ernst & Young, LLP*, 622 F.3d 471, 477–78 (6th Cir. 2010) (citing *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007)). The Court will draw all reasonable inferences in favor of the plaintiff. *See Twombly*, 550 U.S. at 556. But the Court "need not accept as true legal conclusions or unwarranted factual inferences." *Gregory v. Shelby Cnty.*, 220 F.3d 433, 446 (6th Cir. 2000) (citing *Mixon v. State of Ohio,* 193 F.3d 389, 400 (6th Cir. 1999)).

III.

The Court will first address Porter Bancorp's motion to dismiss Plaintiffs' claim for illegal tying in violation of 12 U.S.C. § 1972, the Bank Holding Company Act. The purpose of this Act is "to apply the general principles of the Sherman Antitrust Act prohibiting anticompetitive tying arrangements specifically to the field of commercial banking." *Kenty v. Bank One, Columbus, N.A.*, 92 F.3d 384, 394 (6th Cir. 1996) (quoting *Parsons Steel, Inc. v. First Ala. Bank of Montgomery, N.A.*, 679 F.2d 242, 245 (11th Cir. 1982)) (internal quotation marks omitted); *see also* S.Rep. No. 1084, 91st Cong., 2d Sess. (1970), *reprinted in* 1970 U.S. Code Cong. & Ad. News 5519, 5535 (The Act was passed "to prohibit anti-competitive practices which require bank customers to accept or provide some other service or product or refrain from dealing with other parties in order to obtain the bank product or service they desire.").

4

A.

Porter Bancorp first argues that, by its express terms, Section 1972 prohibits only conduct by a "bank." Indeed, the language of Section 1972 indicates that only the actions of banks are covered:

> (1) A *bank* shall not in any manner extend credit, lease or sell property of any kind, or furnish any service, or fix or vary the consideration for any of the foregoing, on the condition or requirement . . .

12 U.S.C. § 1972(1) (emphasis added). That very provision refers to bank holding companies separately. For example, "on the condition or requirement (D) that the customer provide some additional credit, property, or service to a bank holding company of such bank. . . ." *Id.*

Courts agree that § 1972 applies only to the conduct of banks. *See, e.g.*, *Flintridge Station Assocs. v. Am. Fletcher Mortg. Co.*, 761 F.2d 434, 437–38 (1985) ("This narrow definition was purposefully provided by Congress, *see* 1970 U.S. Code Cong. & Ad. News 5541, and has been explicitly recognized by the courts."); *B. C. Recreational Indus. v. First Nat'l Bank of Bos.*, 75-5053-MA, 1980 WL 1865, at *4 (D. Mass. Apr. 30, 1980), *aff'd*, 639 F.2d 828 (1st Cir. 1981); *see also S & N Equip. Co. v. Casa Grande Cotton Fin. Co.*, 97 F.3d 337, 343 (9th Cir. 1996) (assuming that an entity must be a bank).[3]

Indeed, the Sixth Circuit's formulation of the requirements to make out a Section 1972 claims incorporate this distinction:

> To make out a claim under Section 1972, . . . the plaintiff must prove that (1) *the bank* imposed an anti-competitive tying arrangement, that is, *it* conditioned the extension of credit upon the borrower's obtaining or offering additional credit, property or services to or from *the bank or its holding company*; (2) the arrangement was not usual or traditional in the banking industry; and (3) the practice conferred a benefit on the bank.

---

[3] Although courts have considered whether a non-bank affiliate was acting as a bank's agent, Plaintiff has not argued this point. *See Flintridge*, 761 F.2d at 438.

*Highland Capital, Inc. v. Franklin Nat'l Bank*, 350 F.3d 558, 565 (6th Cir. 2003) (citing *Kenty*, 92 F.3d at 394) (emphasis added).

For these reasons, the Court finds that a bank holding company cannot be held liable for illegal tying under 12 U.S.C. § 1972.

B.

At issue next is whether Porter Bancorp can be held liable as a bank under the Bank Holding Company Act. For the purposes of Section 1972, a "bank" includes both an "insured bank" and "an institution organized under the laws of the United States [or any U.S. state or territory] which both (i) accepts demand deposits or deposits that the depositor may withdraw by check or similar means for payment to third parties or others; and (ii) is engaged in the business of making commercial loans." 12 U.S.C. § 1841(c)(1)(A)-(B).

Porter Bancorp argues that it is not a bank, citing a record from the National Information Center of the Federal Reserve which lists it as a "bank holding company." It further argues that it neither accepts deposits nor makes commercial loans. In general, when a court is presented with matters outside the pleadings on a Rule 12(b)(6) motion to dismiss, the court must either exclude the materials or convert the motion into one for summary judgment. *See* Fed. R. Civ. P. 12(d). The Sixth Circuit, however, takes "a liberal view of what matters fall within the pleadings for purposes of Rule 12(b)(6)." *Armengau v. Cline*, 7 F. App'x 336, 344 (6th Cir. 2001). "If referred to in a complaint and central to the claim, documents attached to a motion to dismiss form part of the pleadings." *Id.* (citing *Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir. 1999), *abrogated on other grounds by Swierkiewicz v. Sorema N. A.*, 534 U.S. 506 (2002)). "[C]ourts may also consider public records, matters of which a court may take judicial notice, and letter decisions of governmental agencies." *Id.* (citing *Jackson*, 194 F.3d at 745). Although

the Federal Reserve document is not mentioned in Plaintiffs' Complaint, it is a public record. The Court takes judicial notice of this record but does not convert Porter Bancorp's motion into one for summary judgment.

Plaintiffs do not specifically contest these assertions but rather argue that on a motion to dismiss, the Court must accept their factual allegations as true. The relevant allegations in the Compliant are the following:

> 9. Defendant, Porter Bancorp, Inc., is a Kentucky corporation and bank holding company with PBI Bank as its wholly owned subsidiary. Porter Bancorp is regulated by the Federal Reserve Bank of St. Louis.
>
> 53. PBI and PBI Bancorp are banks within the meaning of 12 U.S.C. § 1971 and 12 U.S.C. § 1841(c).

A similar situation recently arose in *Adelphia Recovery Trust v. Bank of America, N.A.*. *See* 646 F. Supp. 2d 489, 495–96 (S.D.N.Y. 2009). TD Texas argued that it was not a bank within the meaning of Section 1972 and presented to the court the National Information Center of the Federal Reserve Board's document identifying it as a finance company. *See id.* at 495. It also presented information showing that the FDIC omitted it from the list of FDIC insured bank and thrift subsidiaries of TD Bank. *See id.* Without converting TD Texas's motion into a motion for summary judgment, the court took judicial notice of those two public records and, there being no contrary evidence presented by the plaintiff, held that "TD Texas [was] not a bank within the meaning of the [Bank Holding Company Act] and accordingly" dismissed the claim. *Id.* at 496.

The Court finds that it is presented with a similar situation here. Because of the public record cited by Porter Bancorp, and because Plaintiffs do not make any specific allegations or arguments contradicting this record, the Court finds that Porter Bancorp is not a bank and accordingly dismisses Plaintiffs' Section 1972 claim against it.

7

IV.

The Court will next address Porter Bancorp's motion to dismiss Plaintiffs' other counts against it for failure to state a claim upon which relief can be granted. The Complaint specifically defines Porter Bancorp as "PBI Bancorp." The few paragraphs that contain factual allegations against Porter Bancorp allege that it, through Delcotto, conditioned the extension of the $5.25 million loan on the purchase of OREO property and the assumption of Farley's $66,000 debt.

A.

Count I alleges breach of contract and breach of the duty of good faith and fair dealing against PBI alone. Plaintiffs, in their response to this motion, indicate that this claim is also against Porter Bancorp.

To recover for breach of contract under Kentucky law, a plaintiff must show "the existence and the breach of a contractually imposed duty." *Lenning v. Commercial Union Ins. Co.*, 260 F.3d 574, 581 (6th Cir. 2001) (citing *Strong v. Louisville & Nashville R. Co.*, 43 S.W.2d 11, 13 (Ky. 1931)). The Complaint here does not allege any contractual relationship between Plaintiffs and Porter Bancorp that would allow a breach of contract claim or give rise to the implied covenant of good faith and faith dealing. *See Farmers Bank & Trust Co. of Georgetown, Ky. v. Willmott Hardwoods, Inc.*, 171 S.W.3d 4, 11 (Ky. 2005) ("Within every contract, there is an implied covenant of good faith and fair dealing, and contracts impose on the parties thereto a duty to do everything necessary to carry them out."). Although the Complaint does seem to allege that Delcotto, who may have been acting for Porter Bancorp, participated in negotiations, it only alleges that PBI was involved in the actual extension of credit for the loan.

For these reasons, Count I is dismissed as to Porter Bancorp.

B.

Count II alleges negligence against PBI, Porter Bancorp, Bouvette, Delcotto, and Stefanovich. Specifically, Plaintiffs allege that Porter Bancorp had a duty to exercise safe, sound, and legal banking practices, as well as a duty to supervise its employees "from illegal behavior, including illegal tying arrangements." Porter Bancorp allegedly breached its duty when it "allowed PBI to commit illegal tying arrangements in violation of law."

Parent companies are generally not liable for the actions of their subsidiaries, which are distinct legal entities. *See Dole Food Co. v. Patrickson*, 538 U.S. 468, 474 (2003). Therefore, Porter Bancorp cannot be held liable for the actions of PBI or its employees, nor can it be held liable for failing to supervise PBI employees. In addition, Plaintiffs do not argue any grounds for piercing the corporate veil in this case. *See Corrigan v. U.S. Steel Corp.*, 478 F.3d 718, 724 (6th Cir. 2007) ("The burden of proof to demonstrate grounds for piercing the corporate veil is on the party seeking to impose liability on the parent corporation.").

Therefore, any action for negligence must be based on the conduct of Porter Bancorp or its agents. Plaintiffs allege that Porter Bancorp, through Delcotto, committed illegal tying violations. However, Plaintiffs identify Delcotto as "the former market president for PBI," not Porter Bancorp. Porter Bancorp is not liable for the actions of an employee of a separate legal entity, PBI.[4]

The Complaint identifies Stefanovich as "the Community President of Lexington for Porter Bancorp." The Complaint does not allege any specific acts on the part of Stefanovich, so his liability is presumably predicated on some supervisory role at Porter Bancorp. Since no

---

[4] The Court dismisses the negligence claim against Porter Bancorp with the understanding that Delcotto was an employee of PBI, not Porter Bancorp. If this understanding is incorrect, Plaintiffs may allege the relationship between Delcotto and Porter Bancorp more specifically.

improper acts by Porter Bancorp have been alleged, no supervisory liability can be predicated on those acts.

For these reasons, Count II is dismissed as to Porter Bancorp.

Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Defendant Porter Bancorp's motion to dismiss is SUSTAINED and Plaintiffs' claims against it are DISMISSED WITH PREJUDICE.

cc:     Counsel of Record